**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Misty Dawn Smartt,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-08143-PCT-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Misty Dawn Smartt's appeal from the Commissioner's denial of her application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under 42 U.S.C. §§ 401–434, 1381–1383f. (Doc. 1). The appeal is fully briefed. (Docs. 16, 17, 23). The Court now rules.

**I.    BACKGROUND**

Plaintiff was born in July of 1973, completed high school, and has a certificate in medical insurance billing and coding. (Doc. 13-3 at 46, 49). Plaintiff has past relevant work experience as an administrative assistant and a "supervisor and billing clerk." (*Id.* at 26). Plaintiff argued that the following conditions rendered her disabled: "chronic cervical spine pain, status-post surgery; chronic pain syndrome; and chronic right lower extremity pain." (Doc. 16 at 3). Plaintiff has not engaged in substantial gainful activity since July 22, 2015, the onset date of Plaintiff's conditions. (Doc. 13-3 at 18).

Plaintiff filed an application for SSDI and SSI benefits in August and September 2015, respectively. (Docs. 16 at 2; 13-3 at 16). Those applications were denied at the initial

stage, (Doc. 13-3 at 16), upon reconsideration, (*id.*), and by the Administrative Law Judge ("ALJ") after a hearing, (Docs. 16 at 2; 13-3 at 16–28). The Appeals Council denied review. (Doc. 13-3 at 2–4). Plaintiff then sought review in this Court. (Doc. 1).

### a. The Disability Determination

A claimant must show she "is under a disability" to qualify for disability insurance benefits. 42 U.S.C. § 423(a)(1)(E). The claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging in any "substantial gainful activity." *Id.* § 423(d)(1)–(2). The Social Security Administration has created a five-step process for an ALJ to determine whether the claimant is disabled. 20 C.F.R. § 404.1420(a)(1). Each step can be dispositive. *See id.* § 404.1420(a)(4). "The burden of proof is on the claimant at steps one through four," and the burden shifts to the Commissioner at step five. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

At step one, the ALJ examines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If not, then the ALJ proceeds to step two. At step two, the ALJ considers whether the claimant has a physical or mental impairment or a combination of impairments that are "severe." *Id.* § 404.1520(a)(4)(ii). If the ALJ finds that there is severe impairment, then the ALJ proceeds to step three to determine whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* § 404.1520(a)(4). The RFC is the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). At step four, the ALJ determines whether the claimant can still do "past relevant work" in light of the claimant's RFC. *Id.* § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the final step and examines whether the claimant "can make an adjustment to other work" considering the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If an adjustment can be made, the claimant is not disabled. *Id.*

### b. The ALJ's Decision

The ALJ denied Plaintiff social security benefits because he determined that Plaintiff was "not disabled" and was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Doc. 13-3 at 28). After finding that Plaintiff was not engaged in substantial gainful activity since July 22, 2015 at step one, the ALJ determined, at step two, that Plaintiff "has the following severe impairments: chronic cervical spine pain, status-post surgery; chronic pain syndrome; and chronic right lower extremity pain." (*Id.* at 18–19).

At step three, the ALJ concluded that Plaintiff's impairments, singularly or in combination, did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (*Id.* at 20). Accordingly, the ALJ conducted an RFC analysis and found that Plaintiff could perform "light work." (*Id.* at 20–26). In doing so, the ALJ gave "little weight" to the opinions of Plaintiff's treating physician and "significant weight" to the opinions of the state agency examining physician. (*Id.* at 25).

At step four, the ALJ determined that Plaintiff could not perform any past relevant work. (*Id.* at 26). At step five, the ALJ concluded that Plaintiff could perform the occupations of circuit board assembler (DOT 726.684-110), loader, semi-conductor (DOT 726.685-066), telemarketer (DOT 237.367-046), and surveillance system monitor (DOT 379.367-010), consistent with the vocational expert's testimony. (*Id.* at 27–28). Thus, the ALJ determined that Plaintiff has not been under a disability from July 22, 2015 through the date of the ALJ's decision. (*Id.* at 28).

## II. LEGAL STANDARD

The ALJ's decision to deny disability benefits may be overturned "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler,* 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Id.* (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton*, 331 F.3d at 1035 ("If the evidence can support either outcome, the Commissioner's decision must be upheld.").

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted). The Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

### III. ANALYSIS

Plaintiff contends that there are two potential errors in the ALJ's analysis: (1) The ALJ erred when he failed to provide specific and legitimate reasons for assigning little weight to the opinions of Dr. Karandish, Plaintiff's treating physician, and significant

weight to the opinions of Dr. Gordon, an examining physician, and (2) the ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony. (Doc. 16). The Court addresses each contention in turn.

### a.     Dr. Karandish's and Gordon's Assessments

Plaintiff argues that the ALJ erred when he failed to provide specific and legitimate reasons for assigning little weight to the opinions of Dr. Karandish, Plaintiff's treating physician. (Doc. 16 at 13). Plaintiff also argues that this error was magnified by the fact that the ALJ assigned significant weight to the opinions of Dr. Gordon, an examining physician. (*See id.* at 17–19).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). The ALJ must also apply the factors set forth in 20 C.F.R. § 404.1527(c)(2)(i)–(ii) and (c)(3)–(6). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). In other words, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012–13.

### 1.     Dr. Karandish

Here, the ALJ stated that he gave "little weight to Dr. Karandish's assessments because they are overly restrictive given the objective medical findings discussed [] in the decision." (Doc. 13-3 at 25). The ALJ went on to state that the medical records did not support the "extreme limitations" found by Dr. Karandish, and cited the medical record while averring that "the notes generally showed that [Plaintiff] remained neurologically

intact and ambulated without an assistive device." (*Id.*).[1]

The ALJ justified assigning less weight to Dr. Karandish's opinions by noting that they were unsupported by the objective medical record as a whole. (*Id.* at 25). In discussing Plaintiff's medical record as a whole, the ALJ presented substantial evidence to support his finding. The ALJ noted that Dr. Karandish found that Plaintiff was unable to work in any capacity on three separate occasions, in part, because Plaintiff could sit or stand for less than two hours a day, carry or lift less than ten pounds, and use her hands and feet, bend, reach, and stoop for less than twenty percent of an eight hour day. (Docs. 13-3 at 25; 13-10 at 85–86; 13-11 at 84–85; 13-12 at 114–115).

The ALJ determined that Dr. Karandish's findings were not supported by the record as a whole, however, citing records indicating that Plaintiff was neurologically intact, (Docs. 13-3 at 25; 13-10 at 11, 77, 92, 106, 113; 13-11 at 33, 88; 13-12 at 16), could ambulate without an assistive device, (Docs. 13-3 at 24–25; 13-10 at 30; 13-11 at 58, 62, 66,70, 74, 78, 82, 100, 105, 110, 115, 120, 125, 129, 133, 136, 141, 144; 13-12 at 42, 52), and improved in her condition after surgery. (Docs. 13-3 at 22–26; 13-8 at 24; 13-10 at 78; 13-11 at 89). The ALJ also cited records showing normal tone and strength in the upper and lower extremities. (Docs. 13-3 at 23–25; 13-9 at 54, 59, 64, 71, 78–79, 84, 90, 97, 104–105, 111, 118, 125; 13-11 at 89). In all, the ALJ considered the entirety of the medical record and found that it conflicted with Dr. Karandish's opinions. (*See* Doc. 13-3 at 22–25). The Court considers these records "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Thus, this showing satisfied the "specific and legitimate" standard when assigning "little weight" to Dr. Karandish's opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (the ALJ can meet the specific and legitimate standard by summarizing the facts and conflicting clinical evidence in detail, stating his own interpretation of the facts and evidence, and making findings accordingly).

Further, the ALJ's decision demonstrates that he considered the relevant factors set

---

[1] The ALJ specifically found that Plaintiff uses a cane to ambulate, but she *can* ambulate fifty feet without the use of a cane.

- 6 -

forth in 20 C.F.R. 404.1527(c) when weighing Dr. Karandish's opinion. The ALJ discussed the nature and length of the treatment relationship, noting that Dr. Karandish was Plaintiff's treating physician who completed three medical questionnaires, one for each of Plaintiff's visits. (Doc. 13-3 at 25); *see* 20 C.F.R. 404.1527(c)(2)(i–ii). The ALJ also considered the supportability and consistency of Dr. Karandish's opinion with the record as a whole. (Doc. 13-3 at 25); *see* 20 C.F.R. 404.1527(c)(3)–(4). Additionally, neither the record nor the Plaintiff indicate that Dr. Karandish is a specialist. (*See* Docs. 16, 23, 13-3); 20 C.F.R. 404.1527(c)(5). These considerations affirm the ALJ's assertion that he considered the relevant factors set forth in 20 C.F.R. 404.1527(c). (*See* Doc. 13-3 at 21).

Plaintiff next asserts that the medical evidence cited by the ALJ supports, rather than detracts from, Dr. Karandish's assessments. (Doc. 16 at 15). Yet, it is not for this Court to second guess the ALJ's reasonable interpretation of the medical record because "where evidence is susceptible to more than one rational interpretation, as it is here, it is the ALJ's conclusion that must be upheld." *Benear v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04160-PHX-JAT, 2019 WL 258345, at *6 (D. Ariz. Jan. 18, 2019), *aff'd sub nom. Benear v. Saul*, 838 F. App'x 305 (9th Cir. 2021) (internal alterations and marks omitted).

Plaintiff goes on to state that the ALJ, as an "administrative adjudicator and lay person," was not qualified to determine whether the objective medical evidence supported Dr. Karandish's assessments. (Doc. 16 at 15). However, "[r]esolving conflicts is the ALJ's responsibility and prerogative." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020). Thus, even as a lay person, the ALJ properly weighed the evidence before him and provided specific and legitimate reasons for his determinations. *See Garrison*, 759 F.3d at 1012.

Plaintiff then cites *Gerstner v. Berryhill* arguing that the ALJ did not properly examine the whole record but only looked to certain portions of it and only considered how Plaintiff presented on the days of her appointments. (Doc. 16 at 16–17 (citing *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018)). This case is inapposite from *Gerstner*, however, because, in *Gerstner*, the Seventh Circuit found that the ALJ "fixated" on select portions of the medical record while ignoring others. *Gerstner*, 879 F.3d at 261–62. Unlike

the ALJ in *Gerstner*, the ALJ here determined that Plaintiff was not disabled only after he undertook an analysis of the entire medical record and considered the evidence that both supported and detracted from a finding of disability. (*See* Doc. 13-3 at 19–26). This analysis included Plaintiff's hospitalizations for pneumonia and strokes, Plaintiff's seizures, and Plaintiff's anxiety. (*See* Doc. 13-3 at 19). The ALJ determined that these, and other conditions, were non-severe and could be managed medically. (*Id.*). Thus, the Court finds that the ALJ undertook a satisfactory examination of the record.

Ultimately, the ALJ did not err in giving minimal weight to Plaintiff's treating physician after analyzing the entire medical record and determining that it did not support Dr. Karandish's opinions. *See Batson*, 359 F.3d at 1195 (holding an ALJ did not err in giving minimal weight to the opinions of plaintiff's treating physicians, in part, because they were not supported by the medical record as a whole); *Benear* 2019 WL 258345, at *12 (same); *Hermiz v. Berryhill*, No. 318CV01035BENKSC, 2019 WL 3780271, at *18 (S.D. Cal. Aug. 9, 2019), *report and recommendation adopted*, No. 318CV01035BENKSC, 2019 WL 4016451 (S.D. Cal. Aug. 26, 2019) (same).

### 2.     Dr. Gordon

The ALJ also assigned less weight to Dr. Karandish's opinions because of their conflict with the results of the evaluation performed by Dr. Gordon, an examining physician. (*See id.* at 24–25). Dr. Gordon examined Plaintiff and determined that she was capable of performing light-exertion work. (Docs. 13-3 at 25; 13-11 at 91–97). The ALJ found that the opinions of Dr. Gordon were supported by the medical record and gave them significant weight. (Doc. 13-3 at 25–26). Plaintiff contends that it was improper to weigh the opinions of an examining physician over that of a treating physician, (Doc. 16 at 18), but an ALJ need not give controlling weight to the opinion of a treating physician, *Batson*, 359 F.3d at 1194–95. Because the ALJ found that Dr. Gordon's opinions were consistent with the medical record, the ALJ did not err in considering them substantial evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are

consistent with independent clinical findings or other evidence in the record.").

Plaintiff argues that the ALJ's conclusion was "contrary to the ALJ's assignment of 'significant weight' to Dr. Gordon's opinion, who in September 2018 found [Plaintiff] required the use of a handheld assistive device for walking at all times." (Doc. 16 at 17). Yet, the ALJ found that "a cane is medically necessary" for Plaintiff. (Doc. 13-3 at 20). Further, while the ALJ determined that Plaintiff "can ambulate 50 feet without the use of a cane," (*Id.*), the ALJ supported this determination with citations to the medical record, (*Id.* at 23–24). While the ALJ's RFC determination may have differed from Dr. Gordon's opinion, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

Plaintiff finally argues that the record does not support Dr. Gordon's opinions nor does it support that Plaintiff's conditions improved with conservative treatment. (Doc. 16 at 18–19). The ALJ, however, cited portions of the record that show a medical plan of conservative treatment, (*see, e.g.*, Doc. 13-3 at 23–24 (noting a medical plan of physical therapy, use of a C-collar, temporary use of a wheelchair, and pain medication)), and improvement in Plaintiff's conditions, (*see, e.g.*, *id.* at 23 (noting Plaintiff's report of improvement in neck pain following medical plan of physical therapy and use of C-collar), 25 (noting well-healed incisions and scars along with normal muscle bulk and intact strength in the upper and lower extremities)). At most the record is ambiguous as to Plaintiff's improvement through conservative treatment, and, "given that the ALJ is the 'final arbiter with respect to resolving ambiguities in the medical evidence,'" the Court defers to the ALJ's finding. *Singh v. Comm'r of Soc. Sec. Admin.*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, at *3 (D. Ariz. Sept. 28, 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). While Plaintiff initially underwent multilevel cervical fusion surgery, the ALJ reasonably determined that, for the period at issue, Plaintiff improved with conservative treatment that supported Dr. Gordon's opinions.

### 3.     Conclusion Regarding Physician Assessments

Because the ALJ provided specific and legitimate reasons for assigning little weight

to the opinions of Dr. Karandish, Plaintiff's treating physician, and significant weight to the opinions of Dr. Gordon, Plaintiff's examining physician, the Court will not overturn the denial of disability benefits on this ground.

### b. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred when evaluating her subjective symptom statements. (Doc. 16 at 19). The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. 13-3 at 22).

### 1. Legal Standard

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a Plaintiff's subjective symptom testimony. "First, the ALJ must determine whether the Plaintiff has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15). If the Plaintiff presents such evidence, the ALJ then evaluates the Plaintiff's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a Plaintiff produces objective medical evidence of an underlying impairment, an ALJ may not reject a Plaintiff's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the Plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the Plaintiff that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3)

the Plaintiff's daily activities." *Tommasetti*, 533 F.3d at 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). If the ALJ relies on these factors and [his] reliance is supported by substantial evidence, the Court "may not engage in second guessing." *Id.* (quoting *Thomas*, 278 F.3d at 959).

### 2. Discussion

Plaintiff first argues that the ALJ applied an improper legal standard by requiring Plaintiff's symptoms to be "entirely consistent" with the objective medical evidence. (Doc. 16 at 20–21). Plaintiff further asserts that the ALJ improperly required Plaintiff to provide medical evidence of the severity of Plaintiff's symptoms. (*Id.* at 21).

Although the Court agrees that Plaintiff is not required to provide medical evidence of the severity of his symptoms, *see Garrison*, 759 F.3d at 1014–15, objective medical evidence is a useful tool for an ALJ to assess Plaintiff's credibility regarding the intensity and persistence of her symptoms, *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (holding that objective medical evidence was appropriately used to assess credibility of plaintiff's symptom testimony); *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) (holding that medical evidence is "a relevant factor in determining the severity of the claimant's pain and its disabling effects). The Court does not read the ALJ's "not entirely consistent" statement, (Doc. 13-3 at 22), as requiring the Plaintiff to fully corroborate her symptom testimony with objective medical evidence. Instead, the ALJ's statement merely notes that the record contains conflicting evidence. The ALJ found this conflicting evidence to be Plaintiff's improvement through conservative treatment, the objective medical evidence, and Plaintiff's daily activities. (*Id.* at 22–26).

### A. Conservative Treatment

The ALJ found that "[d]espite [Plaintiff's] allegations of severe and debilitating symptomatology, the evidence of record documented conservative treatment following [Plaintiff's] cervical spine surgery." (*Id.* at 22). The ALJ also found that this conservative treatment led to improvement in Plaintiff's conditions. (*See, e.g.*, *id.* at 23 (citing improved neck pain after use of conservative treatments of wearing a C-collar, physical therapy, and

- 11 -

medication)).

Plaintiff asserts that this argument is belied by Plaintiff's medical records. (Doc. 16 at 21). As discussed *supra*, however, the ALJ cited numerous portions of the record that show a medical plan of conservative treatment and improvement in Plaintiff's conditions. *See supra* Section III.a.2. At most the record is ambiguous as to Plaintiff's improvement through conservative treatment, and, "given that the ALJ is the 'final arbiter with respect to resolving ambiguities in the medical evidence,'" the Court defers to the ALJ's finding. *Singh*, 2020 WL 5757620, at *3 (quoting *Tommasetti*, 533 F.3d at 1041). Because the ALJ determined that Plaintiff's condition improved through conservative treatment, the Court finds that the ALJ did not err in discounting Plaintiff's symptom testimony on this basis. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of 'conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *see also Singh.*, 2020 WL 5757620, at *2–3 (affirming ALJ's discounting of plaintiff's testimony, in part, because plaintiff's conditions improved with medication).

### B. Medical Evidence

The ALJ additionally found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence." (Doc. 13-3 at 22). The ALJ went on to discuss the medical evidence he found inconsistent citing records indicating that Plaintiff was neurologically intact, could ambulate without an assistive device, improved in her condition after surgery, and had normal tone and strength in her upper and lower extremities. *See supra* Section III.a.1.

Plaintiff argues that the ALJ did not "tie-in the characterization of the medical record with any particular symptom testimony." (Doc. 16 at 21–22). The ALJ, however, specifically noted that the medical records did not support the extreme limitations Plaintiff asserted with respect to sitting, standing and walking, (Doc. 13-3 at 25), that Plaintiff's use of an assistive device to walk was not constant as she claimed, (*id.* at 21, 24–25), and that Plaintiff was shown to have normal muscle bulk and tone in her upper extremities which

1 undercut Plaintiff's claimed limitations in lifting and carrying, (*id.* at 21–22, 23–25). Thus, the Court finds the ALJ sufficiently tied his characterization of the medical record to Plaintiff's symptom testimony. *See Lewis v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00765-PHX-MTL, 2021 WL 791467, at *4 (D. Ariz. Mar. 2, 2021) (finding that ALJ, by citing specific instances throughout a multi-year period, adequately tied countervailing medical record to plaintiff's symptom testimony when discounting that testimony); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

### C.  Daily Activities

The ALJ also found that Plaintiff "engaged in a somewhat normal level of daily activity and interaction," which undermined her symptom testimony. (Doc. 13-3 at 22). Plaintiff's activities included going out alone, driving her daughter to school, shopping, doing light household chores, playing board games, and crafts. (Docs. 13-3 at 22; 13-7 at 17–18; 13-11 at 87). The ALJ opined that "[t]he physical and mental capabilities requisite to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment." (*Id.*).

Plaintiff avers that, while she performs the above daily activities, she does so only with "severe pain [and] physical limitations." (Doc. 16 at 22 (citing Doc. 13-7 at 18)). However, even if Plaintiff's daily activities suggest some difficulty functioning, they may be grounds for discrediting her testimony "'to the extent that they contradict claims of a totally debilitating impairment.'" *Wennet v. Saul*, 777 F. App'x 875, 877 (9th Cir. 2019) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)). Here, the ALJ summarized Plaintiff's claims that she suffered significant disabilities including dropping things due to numbness, being unable to walk without a walker, being unable to descend stairs or stand up on her own, and being able to only lift five pounds with either hand. (*See* Doc. 13-3 at 21–22). The ALJ reasonably found that Plaintiff's daily activities refuted her testimony, even if she had some pain and difficulty while performing these activities. *See*

*Singh*, 2020 WL 5757620, at *3 (affirming ALJ's determination that daily activities refuted symptom testimony even though plaintiff experienced difficulty while engaging in activities).

Further, Plaintiff asserts that the ALJ's "mere list of activities, without any information as to the demands, frequency, or duration of those activities, does not show any contradiction with [Plaintiff's] reported symptoms." (Doc. 16 at 23). Plaintiff contends that, ultimately, the ALJ did not find that a substantial part of a typical day was spent engaged in activities inconsistent with Plaintiff's claimed limitations, nor did the ALJ show that Plaintiff's routine activities would transfer to the workplace environment or refute Plaintiff's symptom testimony. (*Id.*).

Even if the evidence is not clear on how long or often Plaintiff performed her daily activities, as long as the ALJ's determination is reasonable, it is not the Court's role to second-guess it. *See Rollins*, 261 F.3d at 857 (holding that, even when record was equivocal about how long and often plaintiff engaged in daily activities, because ALJ's interpretation was reasonable the court would not second-guess it). Further, "the ALJ is not required to show that a claimant's activities are transferable to the work setting in order to discount her testimony on their account. Rather, an ALJ may consider whether a claimant engages in daily activities that are simply inconsistent with her allegations or that suggest that they are exaggerated, irrespective of whether the activities are transferable to a work setting." *Handy v. Comm'r of Soc. Sec. Admin.*, No. CV-19-04545-PHX-JZB, 2020 WL 5699001, at *4 (D. Ariz. Sept. 24, 2020) (citing *Molina*, 674 F.3d at 1112).

Here, the ALJ provided a reasonable determination based on substantial evidence that Plaintiff's daily activities were incompatible with the severity of her alleged symptoms. Thus, the ALJ did not err in discounting Plaintiff's symptom testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); *Singh*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, at *3 (D. Ariz. Sept. 28, 2020) (finding ALJ did not err in discounting plaintiff's allegations of disabling

symptoms and limitations because they were inconsistent with her reported activities).

### 3. Conclusion Regarding Symptom Testimony

Because the ALJ provided specific and legitimate reasons for discounting Plaintiff's symptom testimony, including Plaintiff's improvement through conservative treatment, the objective medical evidence, and Plaintiff's daily activities, the Court will not overturn the denial of disability benefits on this ground. *See Thomas*, 278 F.3d at 959 ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing.").

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly.

Dated this 15th day of April, 2021.

*/s/ James A. Teilborg*
James A. Teilborg
Senior United States District Judge